Case No. 21-1719 Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela Appellants Mr. Jalowitz for the appellants, Mr. Yelling, amicus curiae, Mr. Llanos for the appellate. Good morning, counsel for appellant. Thank you, Your Honor. May it please the court, Kent Jalowitz of Arnold and Porter for the Republic of Venezuela. The district court in this case misconstrued the Hague Service Convention. Its judgment should be reversed and the case should be remanded to give the plaintiff an opportunity to affect service correctly. The practical question presented by this case is what to do under the Hague Convention when main channel service on a foreign sovereign fails or is unavailable. We simply ask the court to apply the opportunity to affect official formal service through diplomatic channels. If the court grants this relief, the plaintiff will not lose its legal claim. We have been telling the plaintiff this since August of 2019. The plaintiff has refused to follow that process and the Republic is now faced with a troubling precedent. We ask the court to correct the district court's misstep and apply the Hague Convention as written. I'm sympathetic to your argument that 15 1b may not even apply in situations where where like this where Venezuela has made an appearance. But I'm not sure if you argued that below. If you if you did, can you point me to where in the record you did? I would I would have to look for that and send the court a letter. I'm fairly confident that we did argue that to Judge Contreras and to Judge Stark but I'd have to look for that and send the court a letter. Well and even if you didn't it's it's it's your opposing counsel has has not necessarily argued that you have it so it may be that they have forfeited their forfeiture argument. I was about to say that that that that was not an issue raised by the appellee so if there was a forfeiture it would have been forfeited in this court. Do you read 15 2 to also only apply to situations where the defendant has not appeared? Yes yes 15 2 is a is a safety valve for 15 1. Like 15 2 it only applies where the defendant has not entry of a default judgment in specified cases. It doesn't it's not a free sir freestanding service authorization and so and so it doesn't it doesn't satisfy nothing in article 15 satisfies the requirement of service of process in the FSIA and as the court knows personal jurisdiction under the FSIA requires service and so any inconsistency between 15 2 on the one hand and the FSIA on the other would be resolved by the FSIA's superseding later in time provisions. The district court acknowledged that that there is no explicit authorization of service in the text of article 15 and there are other articles that expressly authorize service article 8 9 10 11 and 19 article 15 it just isn't one of them and then to the extent that article 15 references service at all it points us elsewhere in the convention 15 1a refers to a method prescribed by the internal law of the receiving state and 15 1b refers to another method provided for by this convention and when 15b says another method provided for by this convention it's referring to another method to affect service. There's also a structural argument with the appellant with the appellee's position as well. One treaty should not be read to strip other provisions of meaning but Saint-Gobain's argument that delivery to the central authority of Venezuela would be enough to affect service would render article 13 superfluous. Article 13 permits a foreign sovereign to to refuse to complete service if it deems compliance to infringe the receiving state's that subparagraph B is which is what the district court relied on establishes a heightened standard where service was not achieved by the internal laws of the receiving state. We've set forth that negotiating history with our translations in our reply brief and I would reference the court to volume 3 of the negotiations particularly page 95. I would also defer to the United States on the construction given by the parties particularly the United States executive which the courts hold carry great weight that the views of the executive carry great weight. I would say that the views of the Justice Department in this case which are long established they're not tailor-made for this case they're long established and pre-existing are are reasonable and indeed consistent with the way that district courts in this circuit have treated service on the United States in domestic cases. Finally I want to turn to three aspects of the district courts rationale that I think are are unpersuasive. The the first and most important is that treaties because they are made by the president and ratified by the Senate are a function of foreign policy and so it is particularly improper as a matter of the judicial function to to find gaps in treaties and attempt to fill them by inferring authority that's not explicitly provided in the text of the treaty or convention. Second point I'd like to make about the district courts decision is that the district court relied on unpublished out-of-circuit cases that either have little or no textual analysis or indeed were not even about article 15-1. The only appellate decision relied on by the district court was a non-precedential decision that turned on 15-2 not 15-1 and at bottom the district court was relying on what what it perceived as a moral hazard or what it called the risk of evasion of service. The Convention and the Foreign Sovereign Immunities Act have a built-in safety net against moral hazard which is service through diplomatic channels. That form of service has been used to serve process on the Republic repeatedly over the last three years without incident or complaint from any litigant that we know of. Service through diplomatic channels at least at the time the convention was drafted in the 1960s was actually the preferred method of service on a foreign sovereign according to the House report that accompanied the Foreign Sovereign Immunities Act. In fact as I mentioned we explained this to the appellee in August 2019 in our very first brief and in February of 2020 I actually stood I'm sorry go ahead. Let me ask at one point in the appellee's brief there's a footnote along the lines of you know this this whole case could just go they would just agree with you if you'd be willing to post a bond. Do you have any thoughts on that? Yeah the Republic is not in a position to post a bond that's just not feasible I that's not and the convention doesn't involve in the claim. The claim is a I think a 30 or 40 million dollar claim. 42 million so it's just a bond saying they're bankrupt. The as the court is aware the Republic of Venezuela at this time is facing an unprecedented proportions and in particular the Guaido administration from whom we take instruction is operating on an on a shoestring budget. We're not we have no ability to make special deals with litigants who don't follow the rules. Fair. Unless the court has questions I think you have my argument. Thank you. We have counsel for appellee. Ah we have amicus my pardon me We have counsel for amicus the United States. Mr. Yellen. Thank you Judge Rogers. May it please the court. Louis Yellen from the Department of Justice on behalf of the United States. Your honors the district court made two fundamental errors in this case. The first error was in construing article 15 as a service provision whereas it's a default judgment provision. The second was in concluding that even the requirements for default judgment were satisfied in this case. The first error your honors is not a close question. It's as if the district court here misconstrued federal rule of civil procedure 55 governing default judgments as a service provision similar to federal rule of civil procedure four. By its plain text all of article 15 15 what the United States has referred to as 15 one and 15 two refers explicitly to circumstances requirements under which a court may enter default judgment against a party. The only references to service are references elsewhere to service as pursuant to provision of the convention. The thing that I'd like to emphasize with respect to that is under 15 sub one which is the only provision of article 15 that plaintiffs have relied upon in this litigation. A plaintiff I'm sorry default judgment may not be entered unless and I'm quoting now from article 15 one B quote the document was actually delivered to the defendant or to his residence by another method provided for by this convention. Plaintiffs completely ignored the latter part of that qualification that is by another method provided for by this convention and they act as if 15 one B authorizes entry of default judgment simply by actual delivery. Now I want to to add this is error on top of error because the threshold question is whether or not article 15 has anything to do with service provides any requirements for adequate service and it simply does not. The last point I'd like to make your honors is as Mr. Yelowitz pointed out the FSIA service provision which after all is the governing law in this case for determining service does have a fallback provision if service is not able to be affected by any of the preceding provisions that is a for provides for service through diplomatic channels. And one thing that's quite important I think for some of the moral hazard arguments that plaintiff has made here is that a for service service through diplomatic channels is effective upon the transmission by the State Department of the papers through diplomatic channels. You suggested in your brief that really a simple solution you say his case should simply be remanded to the district court to allow the plaintiff to attempt service through diplomatic channels. How how would that work in your mind? This court assuming we agreed with that we would remand and our judgment would say what to the district court. You're wrong in suggesting that service can be affected through the central authority that's not what the law is but there can be effective service by attempting through diplomatic channels and what what what happens? Well at that point your honor as our brief noted multiple suits against Venezuela. No no no I understand the possibility is real I'm being very court judge and I have a judgment that says allow them to affect service through diplomatic channels and let's assume this the district court judges first day on the bench and it's he or she says what does that mean what am I supposed to do? I understand your honor the the statute is helpfully very specific on this point 1608 a for requires a plaintiff seeking to serve through diplomatic channels to ask the clerk of court to transmit the papers to the State Department and the statute specifically identifies the office in the State Department that is the director of special consular service and then the secretary shall transmit one copy of the papers through diplomatic channels to the foreign state. Is the case still pending before the district court judge? It is pending in the sense that any case before service has been affected is pending before the district court judge. So the court judge says I'm reserving judge I'm trying to figure out I want to be very there is this court judge says what okay the Court of Appeals has sent it back to me saying my assumptions about the law is simply wrong but we can use this alternative process and so now I am ordering what until when? So until when? What and then until when? I really want you know play judge what I understand what do you do? What are you saying to the parties? Here's what I'm saying to the party so if I might be quite explicit your honor it is the the plaintiff or the party that's seeking service it's their discretion whether they want to affect service. I understand they can say yeah let's assume they they want to continue to try and pursue it. Go ahead. Understood your honor in all other cases that we've cited in our brief the court looks at this court looks at the docket what the court will see is that the party seeking to affect service provides an update to the district court about its attempts to affect service and ultimately those those parties have said told the district court we've not been able to affect service through these other methods we are now attempting to affect service through diplomatic channels. We are going to ask the clerk of this court to send our papers to the State Department for it to serve through diplomatic channels. The district court says if Van Gogh Vance wishes to proceed with efforts to obtain service it should advise the court within five days and update any transmit those papers to the ex-office in the Department of State. Your honor the amount of time if this is really what you're asking about like how much time should the district court give St. Gobain that's a matter within the district court's discretion. I'm just I'm being at a very low level my maybe my colleague Judge Walke he was a district court judge he can tell me I I'm just yeah district judge is sitting there and assume the district court judge knows nothing and I said all I'm asking you is what do you envision happening it's like talk to someone in the world knows nothing about the law so the kid says to you well what happens counsel what do they do the Court of Appeals tells it does what and the district court does what? So I will tell the court this court what district courts have typically done in this case. Tell us what the order says. With respect your honor I will give you an example of an order that could be entered however it is not with that I must make the following caveat your honor it is not the appropriate role of the United States to direct the calendaring of the district court. We are not amicus in this case. I understand your honor but with the deepest respect give us your best thought on how we're making this too hard. We're just trying to get a picture that's all. I completely understand your honors district courts typically don't. We're trying to help you to understand what we want a very low level of information. I understand your honor I do understand your honor what the reason why I'm resisting and I don't mean to be difficult with the court is that what I can tell you is traditionally the courts in the other cases that we've cited have asked for updates every 30 days from the plaintiff about the plaintiff's efforts to make service through diplomatic channels. That would be inappropriate. Let me ask you this along the lines of Judge Edwards question suppose in five days under my hypothetical Sengoban advises the court thank you very much but I'm not interested. Then what happens to the case? Does our order say anything about that? The case would otherwise be dismissed your honor because there is no service upon Venezuela. All right anything further? The one thing I would like to underscore your honor just because I fear that I may have created some confusion with the last colloquy the case if when if the court remanded along the lines of the court was just suggesting it would be in the exact same posture as a case in which a plaintiff or other party has not affected service on the defendant and so whatever happens in that case would be just as if there were no service. So in other words are you suggesting our order should not go into all of this but simply say we reverse period and then it's up to Sengoban as counsel for the Republic has said. I think that would be make its own decision about what it wants to do. Why does the district court have any more role to play? Your honor it that would be a perfectly appropriate order. It would be helpful in light of the dispute that's occurred between the parties for the court to give an interpretation of 1608A.4 and explain that the avenue that was available was serviced through diplomatic channels. I think we're hesitant. I'm sorry your honor did not hear that. A little advisory opinion. With respect your honor it wouldn't be at all be advisory that would be specifically explaining the avenue that was available. The court doesn't have any jurisdiction. This court has jurisdiction over an appeal concerning a dispute between the parties. But if we reverse the case is gone right? The case is in the same posture as if the plaintiff never adequately served. Yes or no? No your honor. All right the answer is what? There is no case in the left in the district court to adjudicate. Your honor with respect this was an enforcement action seeking to enforce an arbitration award. The question would be whether or not the district court could pursue anything on the merits. It cannot until there's proper service. So the answer is there's no role for the district court. Unless St. Gobain acts. Yes your honor. Period. St. Gobain is an independent agent. It can decide to do whatever it wants. And as best I can understand and maybe counsel can advise me here. St. Gobain is concerned about something else. And I'm not clear what it is. And that footnote about the bond. And you have suggested that in some other cases the district court has sort of held on to the case and asked the party to report every 30 days on how is it doing on diplomatic service. Your honor this is this I beg your pardon your honor. And suppose St. Gobain comes back and says we tried but it's futile. That's not a hypothetical that's realistic your honor the United States has affected service on Venezuela through diplomatic channels typically within a number of weeks at the outside. That's in the past. We're dealing with the present situation. St. Gobain is concerned about something. All right. And it's gone through this very expensive litigation because it wants its award enforced. It doesn't want to lose anything in the process. So I thought that might be what Judge Edwards was getting at since Judge Edwards knows how to craft these orders, but this is sort of, you know, a foreign area in some respects. So respectfully, your honor, I'm making a representation about what the United States State Department will do in this case if St. Gobain asks it to make service through diplomatic channels. Is there any possibility that the US will not be able to affect service. I think that's part of the question Judge Rogers is asking what happens if that if that happens, that is, counsel, the district court says, I'll wait reasonable period of time, you have to report to me. And then it comes back from the US. We couldn't affect service. Is that a realistic possibility? I know it has happened routinely, but is it possible they could not? And if so, what is the US's view on what now is the possibility for plaintiffs? It is not a realistic possibility, your honor. Venezuela has indicated its willingness to accept service through diplomatic channels. We have the diplomatic contacts the State Department has represented. Again, let me try to be really clear. We're really not trying to hold you up or make this more than it ought to be. Let's assume what has been the routine and most likely event doesn't happen. The people who have assured you we will accept service next week say we changed our minds not happening. What happens then in your view. In our view, then, your honor, the district court has no subject matter jurisdiction if it is determined that service cannot be made because the district courts. There is no under the law, it says at a certain point, the plaintiff has to at least show that reasonable attempts are made. No, your honor, to be this is quite critical. And if I might be very clear. Yeah, I want you to do is 28 USC 1330 provides for subject matter jurisdiction in the district courts in FSA cases when service has been made pursuant to 1608. If service is not affected under 1608 for whatever reason, a district court lacks jurisdiction, even if they've made reasonable efforts. Yes, your honor. I just want to hear your position on that. Okay. Yes, your honor, even if they've made reasonable efforts 1608 and suits against foreign sovereigns, the formalities are critical as this court is recognizing trends are We get your argument. Thank you very much. Thank you, your honors. All right, counsel for respondent here. No council for Apple. Yes, thank you, your honor. May please record. My name is Alex, you know, and as the court just noted, I'm here on behalf of single performance plastics Europe, the happily and the plaintiffs in these proceedings. And just for a moment, because I think there was some confusion implicit in the discussion before I want to return to a couple of facts. First of all, just To remember that this is A case about an arbitration award rendered by a tribunal under the Washington Convention, as I'm sure the court knows Pursuant to that convention and also pursuant to 2822 USC 1650 a arbitration awards are already have the status of foreign of judgments of one of the The highest court of one of the several United States. So it's not like A commercial arbitration where this is already a judgment under the law of the United States. And then to move forward with the enforcement, you know, we initially filed a petition in Delaware to enforce the award and we served. This is the other thing that I thought was said that was You know, mistaken. We did serve the petition on Venezuela. We did it by means, you know, established in the Hague Convention, we sent That's not true. I mean, you just can't find support for that the district court seem to assume you could get to the central authority and that's an effective service process that is wrong. That is, that is, and that is all you have done. You have got to show that you affected service on the Attorney General, when you read all these papers and the law and you didn't do that. And you didn't get a certification of service, either. Your Honor, we had to serve the papers on Venezuela, and we did serve the papers on Venezuela. You did not serve, you did not Recall that I'm one of the three people you have to convince you might want to know what's bothering me. Okay, you did not affect service of process on Venezuela. There's a way to do that. And it's not through the central authority. It has to go to the Attorney General there. There's a way to do the district court. Respectfully was mistaken in its assumption about how you affect service of process and was seemed to be concerned that it might be unfair not to allow it. Well, that's too bad. Well, no, no, Your Honor. There are two methods of service. The United States would, for whatever reason they want to, pretend that there's no opportunity under the Hague Convention to serve papers through the central authority. There are. In this case, the central authority designated by Venezuela is Venezuela. It's the foreign ministry. Not to serve process. Counselor, really, we've all read this. It's not to serve process. It's to receive papers. They've then got to get it to the Attorney General and give you a certification. No, it is to serve process. That's completely wrong, Your Honor. Okay, well, then we are looking at very different documents. There's nothing to support that interpretation. And in that respect, the United States is exactly correct, based on my read of what's before me. You cannot affect service the way you did it. And you have to have a certification that went to the Attorney General of Venezuela. It did not. Well, it's true we didn't get a certification, but that's because Venezuela itself pocketed the document. All you're doing is explaining to us an unfortunate situation. It's not an unfortunate situation. Well, from your standpoint, it's certainly unfortunate. You would have wished that this would have been enough, but it isn't enough. Well, no, no. It is absolutely enough because the entire premise of Article 15 is that where there is actual service, then nothing else is required. And here, the only thing that didn't happen is Venezuela wearing one hat. The Central Authority hat. The same entity, the foreign ministry, which is, of course, the entity that is designated to deal with the outside world, just put the documents in its pocket instead of acting. That's simply not what Article 15 is designed to do. The situation might be different if we were trying to serve some random individual in Venezuela. And the Central Authority said, well, I tried to find that random individual, but I couldn't. Here, the random individual is the same person who is the Central Authority. So what the district court said, and multiple district courts have said this, by the way. That's why we have courts of appeals. Well, absolutely, Your Honor. You're mistaken. Respectfully, on my read, and I don't know why you don't take that as, unless my colleagues tell you, no, you're right on track. I don't know how you can get that read out of it. And so what else should we be thinking about if that read that I'm giving you is a problem? What do you got to look? I think you have a huge problem. You have to affect service, and you can't do it through the Central Authority, and you have not served the Attorney General of Venezuela, which you must do. Well, Your Honor, again, I have to disagree because the Hague Convention expressly permits service through the Central Authority. It's not like that option doesn't exist. Yes, let me say, you keep saying service through the Central Authority. No one is disagreeing with that, but that's not the same as effectuating legal service on Venezuela. And what I'm trying to understand here is, you know, the Hague Convention, while it does a lot of great things, it also protects defendants. And one of the things it seems to me that your argument overlooks is it may well be that someone is in this position of Sangoban, and it sends its papers to the Central Authority and nothing happens. And the convention contemplates that situation. All right. Venezuela, I mean, Sangoban has to figure out another way to serve Venezuela, if it wants to proceed in the U.S. courts. Well, again, I think that the critical distinction here is between a situation where we're trying to serve someone, a third party in Venezuela, and when we're trying to serve Venezuela itself. Let me ask you a question. The footnote in your brief about a bond. Can you explain to me what your client is concerned about, absent a bond? Well, obviously, Venezuela is trying to play cat and mouse here, and that's been the situation over and over again. Remember that they didn't, although they had actual notice, they didn't show up until the last day before a default was issued. And then they raised this issue, and then we, you know, they've obviously had actual notice for the better part of, you know, two years, even on their own account of the facts. But actual notice is not good enough here. Well, it is when it's a product of service. No, what I'm getting at is the convention says, here's how you can serve a foreign sovereign. And you either do it my way, or there's no service. But the foreign service says, if you want to do it one way, then you can send your papers to the central authority, and it will forward them. All right, to the Attorney General. So that didn't happen. So, no, we are our position is it did happen. Have any proof that the Attorney General has received your papers? Have you received a certificate? Well, no, we haven't received a certificate. All right, so now what do you do? And I'm interested, A, in this footnote, because I know that both judges had footnotes about Venezuela. And I'm interested to know why your client will pursue, if you care to say, diplomatic service. Well, I mean, for one thing, Your Honor, it's just going to reset the clock. I mean, we've already waited a solid three years to get to this point. The idea that we can just, you know, go around in circles on a situation where we provided the papers to the Venezuelan government. And by dint of their own refusal to perform the simple administrative act that is their obligation under the Hague Convention, they can thwart this process and just ask us to run around in circles for another two years. It's just, you know, it's a fraud on the court. What do you have to do to effect diplomatic service? Diplomatic service is reliant on the United States then transmitting the papers to Venezuela and then once again Venezuela acknowledging service. As we've already seen, they have zero interest in doing that. Well, so there's, what is it, a postage stamp to send the papers to the State Department? Well, no, it's years wasted, Your Honor. It's not a postage stamp. It's years wasted in starting this proceeding all over again. Well, I understand that, but if you lose here, what do you do? Well, if we lose here, we'll restart the clock because we have no choice. But the choice is before you right now as to whether you want to do that or not. And we're saying... No, really, the choice is strict construction of the convention. The strict construction of the convention is pursuant to Article 15. They have received actual notice and therefore it was perfectly appropriate for both district courts to infer that there was actual notice. It doesn't say actual notice. It says actual notice in conformity with one of the rules of the convention. I'm paraphrasing. Well, yes, and we did conform with the rules. On our part, we submitted... What rule? I'm sorry? What rule? We're totally missing you. We're reading the same documents. I mean, that ought to give you a clue. I mean, we totally don't understand what you're talking about. There's nothing... When you read the relevant legal papers, there's nothing suggests that you can affect the service of process through the central... I'm really giving papers to central authority. There's nothing that says that. Nothing. But that's the very purpose of Articles 3 and 5 is to serve... And mind you, we've served this process in this manner in a number of cases. Well, yeah, because maybe the central authority did what you hoped it would do, which was to serve the Attorney General. Well, not what we hoped it would do, but what it's obligated to do. Okay, it's fine, but then what happens when they don't do that? That's the situation you're in. You have to have something to show that they did it. There is nothing to show that here. Well, we have their certificate of receipt of the papers. I don't know how else to raise my concerns. I just wanted you to understand... What is the concern, Your Honor? I mean, I think it's... Delivering papers to the central authority is not how... Delivering papers to the central authority does not affect service of process. Venezuela said, do it my way, or there's no service. The fallback is diplomatic service. But Venezuela doesn't have that authority to say, do it my way. Yes, it does. That's the whole point. These states signed on, and they could come up with schemes of their own. No, they have to follow the hate convention. That's an obligation on their part. Yes. Okay. So we have no idea of why your client is reluctant, other than time, to pursue diplomatic service. That's an entirely justifiable reason, Your Honor. Plus... I'm not suggesting it's not a reason, but I'm saying that is your reason. I wouldn't say that there's any other. I mean, other than also just the fact that the hate convention is being thwarted. The Venezuelan state has obligations. A treaty has multiple parties, and there are implicit obligations on the part. So when a state appoints a central authority or designates a central authority, they're saying that this central authority will do its job. So essentially, what Venezuela did here by not doing its job is a violation of the hate convention. No, but what we're trying to get you to focus on, and I understand you don't want to, is that these foreign sovereigns signed on, but they just didn't open themselves to service willy-nilly. And they gave you a fallback. It has to be consistent with the law of the national state. When you read the conventions, that's what it says. And consistent with the law of the national state, there's nothing to indicate that Venezuela has agreed that delivery to the central authority is effective service. I don't know how you missed that. I mean, it's just not there. It's not there. It says it has to go to the attorney general. That's consistent with the law of the state of Venezuela. And that's what the conventions say. When you read all of what's before us, the relevant law before us, you have to be consistent with it. And you may run into problems. There's no question about it. And that's why you sometimes may have to use the U.S. to effect service for you through diplomatic means. But in any event, I think it's important, what we're trying to say is important for us that you understand our concerns, because the concerns leaped out for all of us in the same way. Well, I have some significant concerns with the idea that we want to allow states to designate authorities and then have them not do their job, even though this central authority is the very same person. The foreign ministry is the state. The attorney general is the state. They're not separate persons. There's one person. It's Venezuela. Venezuela is the respondent here. And all we're saying is that Venezuela, wearing one hat, put the documents in its pocket and pretended it never happened. And we're going to countenance that. And I have a serious problem with the judiciary countenancing that kind of conduct. And I would think that you would as well. Even if the Pentagon signed on to a treaty that allows it. It does not allow it. I know. I know. I know. Because you want to interpret the terms of the treaty. And that's what the district courts wanted to do. We can promise you we're going to follow the law. We don't do what we prefer to do. We follow the law. So we can give you that assurance. All right. Anything further, counsel? Not for me. All right. Do you want to comment at all about the nature of our order to the district court? Whatever order you make is, at this point, I mean, whether you remand the case or you dismiss it, the award is already, as I said before, under 22 U.S.C. 1650A, a judgment of the highest court of one of the several United States. If we have to, if you order that the case be remanded and then we refile or we simply refile it, it doesn't change things. So I don't think that that's a significant distinction. Okay. Thank you, counsel. All right. So, counsel, for appellant, anything further? Thank you, Your Honor. I have three things further. Number one. So, first of all, I want to clarify or really correct my statement to Judge Walker. Judge Walker had asked about the no default situation, whether we had argued that to the district court. We were listening to the other parties. I looked and, in fact, we did not raise that. So I wanted to correct that and apologize for my misremembering. But as we discussed, it has not been something that was carried through by the appellee. And for reasons described in footnote two of our reply brief, I think that the issue is fairly encompassed within the issues that we did raise in the district court. And I would refer the court particularly to the decision in Harmon Industries about the scope of what an appellant is permitted to argue. So that was the first thing. The second thing is I wanted to come back to Judge Edwards' question about what the decretal provision should look like. And I want to commend to the court the decision in a case, I may be mispronouncing the name, Barreau against the Embassy of the Republic of Zambia, which was a decision from 2015. Actually, Judge Rogers was the author of that decision. And in the final paragraph, the court held that service had not been effected correctly. And the court wrote, we remand the case for the district court to afford Barreau, proceeding in form of pauperis, the opportunity to effect service. And I went on to give a little bit of guidance. And I think that would be perfectly appropriate for the court to do in this case. We're not asking for the case to be dismissed. It can be remanded. The case should be reversed. The judgment should be reversed. And the case can be remanded for the district court with instructions to exercise its discretion to permit the plaintiff the opportunity to effect service in accordance with the convention. That's the second thing. I hope that's helpful to the court. The third thing is I wanted to be really clear about diplomatic service. Both the convention and the Foreign Sovereign Immunities Act make diplomatic service purely an act of the State Department itself. There's no acceptance needed by the receiving state. Diplomatic service is complete upon acts by the United States Department of State. There was a proposal in the Foreign Sovereign Immunities Act to condition the service on acceptance by the receiving state. And that was rejected by Congress. Let me ask you what that means as a practical matter. Suppose the Department of State receives these papers in the proper office, etc. And Venezuela refuses whatever it normally should do to acknowledge diplomatic service. Are you suggesting then the State Department somehow becomes subject to the judgment? No, no, no, not at all. So what mechanically what happens is the State Department delivers the papers through diplomatic channels to the recognized authorities. The State Department, without waiting for anything to come back from Venezuela or any other foreign sovereign, delivers to the plaintiff a certification that it has affected service through diplomatic channels. Just so I'm clear. They serve it on the Attorney General or they serve it on anybody the Department chooses in Venezuela? In this case, because of the limited nature of the Guaido administration, they are affecting service at this time on, I believe, on recognized diplomats sent by President Guaido. But who receives service, whether that complies with the internal law of Venezuela, is not germane to the issue of proper service. If the United States Department of State issues a certification, and I see Mr. Yellen nodding, so that gives me comfort that I'm getting it right here. If the United States Department of State issues a certification to the plaintiff saying we, the United States Department of State, have affected service through diplomatic channels, that's the end of it. Service has been affected and the court now... Under the Foreign Service Immunity Act, that's the end of it and the plaintiff can proceed. Correct. Correct. And that's also under Article 9 of the Hague Convention. The same result obtains under Article 9 of the Hague Convention. But in both cases, I mean, in the interest of transparency, I wanted the plaintiff to understand what we viewed as the correct interpretation of the law. But my client has no discretion to reject State Department service or to say we don't recognize it or anything like that. I mean, they can say that, but it wouldn't be binding in court. I was simply trying to be transparent with the plaintiff about what we were doing. And in fact, in other cases where the United States Department of State has affected diplomatic service, there's not been an issue. We've not challenged it. We've not criticized it. We've not complained about it. And the courts have gone on to enter judgments on behalf of those plaintiffs. Okay, I think... Just follow through just a moment. No discretion not to accept service, however, affected by the Department of State in response to Sango Ban's request. Correct. Correct. Correct. The State Department controls that. I'm sorry. Yes, and then Sango Ban's motion for enforcement would remain before the district court? That is my recommendation. This court has discretion to reverse and remand and give Sango Ban the opportunity to affect service correctly. Those were the only things that I wanted to clarify. I think the court has our argument. If there are other questions about those or other matters, I'm glad to answer them. And the Department of State has no discretion to reject or to require exhaustion or anything like that. Yeah, I don't know the answer to that as a legal matter. I can tell you as a practical matter, the Department of State has been forwarding these requests in due course. And I don't think I'm speaking out of school to say that it's not just Venezuela. There are other countries where there has been, for whatever reason, a breakdown in sort of the routine procedures that work well in the ordinary case. Even countries where there are no diplomatic relations. And the State Department seems to find a way to affect service, sometimes through intermediaries. And that's up to them. And if there's some diplomatic reason why they wouldn't do it, I would think the court would take that into account. But we haven't seen any problem with that in Venezuela or in the case law for many, many years. I think in the early 1980s, there was a problem with Iran, but that got sorted. And so I understand that the court might be worried about, you know, what happens if the failsafe fails. But I think the thesis of the drafters of the convention and the thesis of Congress in the Foreign Sovereign Immunities Act is that the failsafe is the executive in its conduct of foreign affairs. And so we would expect the courts to be comfortable relying on the executive in that constitutionally allocated domain. Any further questions? Thank you very much, counsel. Thank you, Judge. Counsel, we will thank you and take the case under advisement.
judges: Rogers, Walker, Edwards